283 S.C. 94 (1984)
321 S.E.2d 51
Alex H. COSTAS, Wade H. Jones, Sr., and Wade H. Jones, Jr., Appellants-Respondents,
v.
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION, A. W. Hursey, Jr., W.C. Hopper, and John T. Adair, Respondents-Appellants,
v.
John B. HOUSER, Jr. and James R. Bradham, Jr., Respondents.
22162
Supreme Court of South Carolina.
Heard June 8, 1984.
Decided August 29, 1984.
*95 Alex H. Costas, pro se.
W.C. Coffey, Jr., Manning, for appellants-respondents.
J.D. Lee, Jr., Samuel J. Abrams, and Kenneth R. Young, Jr., Sumter, Jacob H. Jennings, Bishopville, and T. Kenneth Summerford, Florence, for respondents-appellants.
*96 Heard June 8, 1984.
Decided August 29, 1984.
LITTLEJOHN, Chief Justice:
Respondent-Appellant First Federal Savings and Loan Association brought this action to recover a debt owed by Wyboo Gulf Marina, Inc., and by owners, Respondent John B. Houser, Jr., Respondent James R. Bradham, Jr. and also by Respondent-Appellant A.W. Hursey and Respondent-Appellant W.C. Hopper, all of whom endorsed the note evidencing the debt. First Federal sued these four endorsers and the next subsequent holders in the chain of possession of Wyboo Gulf Marina, Inc., who are Appellants-Respondents Wade H. Jones, Sr., and Wade H. Jones, Jr. Through numerous cross-complaints and counterclaims the next two subsequent holders Respondent-Appellant John T. Adair and Appellant-Respondent Alex H. Costas also became involved in this litigation.
The matter was referred to a Master who recommended denial of First Federal's claim on the note, granted judgments of $10,000 each for actual and punitive damages on the counterclaims by Hopper, Hursey, Houser, and Bradham, and ordered First Federal to pay attorneys' fees to the attorneys involved in the action.
The Circuit Court judge reversed, holding (1) that each holder in the chain of possession of Wyboo was liable on the note; (2) that each successive holder was liable to the preceding holder; and (3) that each preceding holder was entitled to indemnification from each subsequent holder. He denied all attorney's fees and the counterclaims of Hopper, Hursey, Houser, and Bradham. We affirm.
Five Appellants set forth as many groups of exceptions for a total of thirty-six allegations of error. We will not treat them seriatim but all have been considered and the result which we reach disposes of all of them.
The missteps and errors of some of the parties to this action have created a tangled web of confused and complex facts which do not allow for an easy solution. We first endeavor to sort through these facts.
*97 W.A. Loflin, the owner of a tract of land on Lake Marion, leased it to Hursey and Hopper in late 1971. The lease was for a period of ten years with provisions for three additional ten year renewal terms. Hursey and Hopper assigned that lease in January 1972, to Wyboo Gulf Marina, Inc. (Wyboo), a corporation owned entirely by them.
In October 1972, First Federal Savings and Loan Association (First Federal) lent $58,500 to Wyboo. In return, Wyboo gave First Federal a note personally endorsed by Hursey, Hopper, Houser, and Bradham (the endorsers). Wyboo also gave to First Federal as security for the loan what purported to be a first mortgage on the property leased by Loflin to Hursey and Hopper and assigned by them to Wyboo. For some reason, this mortgage was never properly finalized since the lease was not assigned to First Federal.
In July 1973, Hopper and Hursey sold all of the common stock of Wyboo to Wade H. Jones, Sr., and Wade H. Jones, Jr., (Joneses) who signed an Assumption Agreement by which they assumed the obligation to First Federal. First Federal never recognized this agreement but accepted payments from the Joneses.
In July 1974, the Joneses sold all of the common stock of Wyboo to J.T. Adair who signed an Assumption Agreement by which he assumed the obligation to First Federal. He also warranted and guaranteed to the Joneses that he would indemnify them for all claims arising under the contract. The Joneses continued to hold the shares of stock as collateral for the balance of the purchase price.
Sometime prior to September 1974, landowner Loflin attempted to terminate the lease because payments were in default. On September 11, 1974, First Federal wrote a letter to the four endorsers and the Joneses telling them of the proposed termination of the lease, of irregularities in the loan, and of the necessity that the loan documents be put in order. None of the recipients responded in any way to this letter.
By January 15, 1975, the lease agreement between Wyboo and Loflin had been terminated and a new lease executed between Loflin and Adair, then in charge of the property. The Joneses were not notified of this. In February 1975, Hursey, Hopper, Houser, and Bradham entered into a Forbearance *98 Agreement with First Federal in which they:
(a) acknowledged that they were jointly and severally liable for the debt;
(b) waived all past irregularities in the loan; and
(c) acknowledged that the property covered by the mortgage was then in possession of Adair and Wyboo.
The loan had been in arrears off and on since 1973 and had just been made current by payment on January 27, 1975. No notice of this Forbearance Agreement was sent to Adair.
In August 1975, Adair (with the permission of the Joneses) sold to Alex Costas one-half (200 shares) of the shares of common stock in Wyboo. In June 1976, Adair abandoned Wyboo and left South Carolina. Costas eventually paid off the balance of the contract price between the Joneses and Adair. Costas then created Gangplank Marina, Inc., with the assets of Wyboo and sold the assets to Robert J. and Dorothy J. Sorenson, who are not a party to this action. The purchase price included assumption of the loan from First Federal. The entire amount of cash received from the Sorensons was used to pay the debts of Wyboo. In July 1977, the Sorensons negotiated a new lease of the property from Loflin.
During this period, First Federal was aware of the transfers and accepted payments from the different owners of Wyboo.
After the loan went into default, First Federal brought this action in September 1978, and numerous cross-complaints and counterclaims were filed.

I.
The first issue which confronts this Court is that of liability on the part of the four endorsers of the note. Hursey, Hopper, Houser, and Bradham endorsed, as individuals, the note for $58,000 loaned to Wyboo by First Federal. As security for this note Wyboo attempted to execute a mortgage either on a fee simple title to the real estate or on the lease between Wyboo and Loflin. Wyboo had no fee simple interest. The attorney at the closing failed to assign to First Federal the lease from Loflin. The note accordingly was unsecured except by the four endorsements.
*99 In reversing the Master, the trial judge correctly found that the attorney acted as an agent for Wyboo and the four endorsers when he neglected to have the lease assigned. Thus, there was a unilateral mistake which was imputed to Wyboo and the four endorsers. This mistake did not render the endorsements voidable. In Jones v. Thomas and Hill, Inc., 265 S.C. 66, 216 S.E. (2d) 871 (1975), this Court stated that the question of the agency of an attorney at a closing was a question of fact.
Here, the borrowers selected the attorney and paid him. First Federal did approve the attorney after the borrowers selected him. There was no evidence that the attorney selected by the borrowers had to follow the sole direction of First Federal. The trial court correctly found that this attorney was the agent of the endorsers. Jones. The actions of the attorney at the closing are imputable to the four endorsers. See Graham v. Town of Loris, 272 S.C. 442, 248 S.E. (2d) 594 (1978). Accordingly, the endorsers remain liable on the note. S.C. Code Ann. § 36-3-414 (1); § 36-3-414 Official Comment 1; § 36-3-416(1).
Notwithstanding the error of their own attorney, the borrowers contend that they should not be liable for two reasons:
(1) That First Federal committed a fraud upon them by failing to disclose material information that they had a duty to disclose; and
(2) That, under § 36-3-606(1)(b), First Federal impaired their collateral.
When the note was originally signed in 1972, neither the lender nor the endorsers nor Wyboo knew that the lease had not been properly assigned. That knowledge did not surface until 1974, at which time First Federal wrote to Hursey, Hopper, Houser, Bradham, and Joneses. The payments on the lease and the note were kept current until mid-1974. First Federal, because the attorney at the closing was the agent for Wyboo and the endorsers, had no knowledge it could disclose to the endorsers from the time of the signing of the original note until 1974. First Federal could not have committed any fraud concerning that original document.
The endorsers' second point is covered by S.C. Code Ann. § 36-3-606(1)(b) which states:

*100 (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

* * *
(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.
This section necessarily presupposes that valid collateral exists which the lender (First Federal) impaired. The evidence shows that the lease never became collateral for the loan. First Federal could not have impaired collateral that did not exist. Accordingly, First Federal is in no way liable to any one of the four endorsers.

II.
The next issue which confronts this Court is the effect that the Forbearance Agreement signed by Houser, Hursey, Hopper, and Bradham on February 28, 1975, has on their liability.
During 1974, Adair, who had purchased the stock of Wyboo from the Joneses, fell behind in both the lease payments and the loan payments. Sometime in August 1974, First Federal received a copy of a letter dated August 15, 1974, from Loflin stating that he was going to terminate the lease. On September 11, 1974, First Federal wrote a letter to the four endorsers and the Joneses advising them that:
(1) There were irregularities with the loan;
(2) The loan was two months in arrears;
(3) The original commitment for the loan had never been complied with; and
(4) The lease between Wyboo and Loflin was in default and had been terminated.
Neither the endorsers nor the Joneses responded to the letter of First Federal in any way. None of them inquired as to what the problem might have been.
On December 17, 1974, First Federal mailed a letter by certified mail to these same persons, again putting them on notice of the aforementioned problems. This letter referred to its previous letter of September 11. Again, the four endorsers ignored the problem. The Joneses did write a letter to John Adair's attorney. No other inquiries seem to have been made. *101 By mid January 1975, the loan was $1,960 in arrears. On January 27, First Federal's attorney received a letter and a check from the attorney for Adair and Costas. The check made the loan current.
On January 29, First Federal mailed a letter to the original four endorsers (Houser, Hursey, Hopper, and Bradham) telling them:
(1) That it had arranged for Adair to pay the loan current; and
(2) That before First Federal could accept the payment and declare the loan in satisfactory condition each of them had to sign an agreement evidencing their willingness to continue to be liable as endorsers upon the original note.
First Federal had already accepted payment and the loan was current. First Federal enclosed the agreement which (1) stated that the four endorsers were still and would continue to be liable; (2) waived all "irregularities" in the loan; (3) acknowledged a new lease; and (4) acknowledged that they understood the full intent and import of the agreement.
The agreement is of no real significance. The original note used words guaranteeing the payments and the liability of these original endorsers became indistinguishable from that of a co-maker. S.C. Code Ann. § 36-3-416 Official Comment. Anything First Federal did or did not do on January 29, 1975, after the lease had been terminated and two and one-half years after the note was endorsed, has no effect on the liability of these four endorsers or any other parties to the transactions.

III.
The next question to be determined by the Court is the liability of the Joneses, of Adair, and of Costas. When the Joneses and then Adair bought Wyboo they individually signed Assumption Agreements. The purchase price of Wyboo included assumption of the debt to First Federal. Thus, the Joneses became principals and the four endorsers sureties, and, in turn, Adair after his purchase became the principal and the Joneses sureties. Jones v. Bates, 241 S.C. 189, 127 S.E. (2d) 618 (1962); 55 Am. Jr. (2d) Mortgages § 1063.
*102 Furthermore, Costas, after he purchased one-half (200 shares) of the shares of Wyboo, began to control Wyboo, and began making the mortgage payments to First Federal, also assumed the debt to First Federal. He then also became the principal with Adair who retained a one-half interest in Wyboo. Thus, Adair and Costas are both principals in this chain. Costas thereafter converted the assets and liabilities of Wyboo to those of Gangplank and then sold Gangplank to the Sorensons who assumed the debt to First Federal as part of the purchase price. Costas never personally received any of the purchase price; the money went to pay the debt of Wyboo.
As to the liability of Costas and Adair we adopt the rationale of the trial judge:
An examination of the record reveals that the defendant Costas purchased two hundred shares of stock in Wyboo from the Joneses which they were holding as collateral under their Contract of Sale with the defendant Adair. Costas acknowledged the acquisition of the stock and stated that he assumed corporate responsibility for the performances of the contract. [Personal liability is contested.]
It is recognized that a corporation is an entity separate and distinct from its officers and stockholders, and that its debts are not the individual indebtedness of its stockholders. This is expressed on the presumption that the corporation and its stockholders are separate and distinct ... and this oft-stated principle is equally applicable, whether the corporation has many or only one stockholder. Olin Matherson Chemical Corp. v. Planters Corp., [236 S.C. 318], 144 S.E. (2d) 321 (1960). However, the September, 1976 Note given to the Joneses by Costas was not clothed with any indicia of corporate capacity. It should be noted further that Costas negotiated the transfer of stock formerly pledged as collateral to the Joneses to himself and made several payments to First Federal on the Note obligation after the stock was transferred to him.
It is well settled that directors and officers are personally liable on written instruments signed by them which are not so worded as to bind the corporation. 19 CJS. Corporation § 840 p. 265. Upon examination of the record this Court concludes that the defendant Costas was not acting in a corporation capacity when he entered into his business relationship with the Joneses, and therefore, does not enjoy the cloak of corporate *103 limited liability as to them. Hence, he is individually liable to the Joneses.
The Court agrees with the Joneses' contention that Costas took possession of Wyboo Gulf Marina, Inc. subject to the Contract of Sale between the Joneses and Adair and the Note to First Federal and that in assuming performance of the Contract of Sale, Costas agreed to indemnify the Joneses from any claims arising out of his purchase of Wyboo Gulf Marina, Inc. However, inasmuch as Costas acquired two hundred shares of the stock and entered into active management and control of Wyboo Gulf Marina, Inc. with the remaining two hundred left in Adair's name, this Court concludes that both Costas and Adair are jointly and severally liable to the Joneses under the indemnity provision of the Contract of Sale between the Joneses and Adair.

IV.
Finally, this Court confronts the issue of attorney's fees. We also agree with trial judge's holding:
The plaintiff has excepted to the Master's failure to award attorney fees to it, the error being there was a contractual obligation by the four endorsing defendants to pay such fees. However, in view of the conduct of the parties herein and the apparent errors in judgment which attended the execution of the original October, 1972 Note and the subsequent February 28, 1975 purported agreement, which greatly aggravated an already flawed business transaction and plaintiff's failure to timely discover that its loan file was incomplete, this Court, as matter of equity, declines to set attorney fees for any of the parties to this action. Of course, the holdings of the Court in regards to attorney fees would apply with even greater force to counsel for Mr. and Mrs. Sorenson who were not parties to this action, hence, the Master was in error in finding that their counsel was entitled to attorney fees.
All exceptions of all appellants have been considered and found to be without merit. The order of the trial judge is *104 affirmed and the case remanded for further proceedings, if needed, to comply with the directives of his order.
Affirmed.
NESS, GREGORY, HARWELL and CHANDLER, JJ., concur.