674 S.E.2d 519

2003–CP–26–01786

**HORRY COUNTY, a body politic, Appellant,**

v.

**Michael R. RAY, Park–Ray Landscape, Inc., Horry County State Bank, Coastal Federal Savings Bank, Coastal Management Associates, Inc., ARS, and United Video, Defendants,**

of whom Horry County State Bank is Respondent.

2003–CP–26–05799

**Horry County State Bank, a South Carolina Corporation, Respondent,**

v.

**Park–Ray Landscape, Inc., Michael R. Ray, Individually and as Officer of Park Ray Landscape, Inc., Horry County, a body politic, Branch Banking & Trust, S.C. Department of Revenue, Coastal Federal Bank, Sunbelt Rentals, Inc., United Video, Coastal Management Associates, Inc., Jill Allen, Ernest Holt, Walter Nalepa, and Margaret Dvores, on behalf of themselves and others similarly situated and derivatively as homeowners in Oakmont at River Oaks Homeowner's Assn. Inc., Defendants,**

of whom Horry County, a body politic is Appellant.

No. 4501.

Court of Appeals of South Carolina.

Heard Dec. 3, 2008.

Decided Feb. 10, 2009.

78

John B. McCutcheon, Mary Ruth M. Baxter and Lisa A. Thomas, all of Conway, for Appellant.

Andrew C. English, III, and Mary Dameron Millken, both of Columbia and Carroll D. Padgett, Jr., of Loris, for Respondent.

KONDUROS, J.:

Horry County (the County) appeals the special referee's order finding the County failed to establish an equitable lien on certain property and giving priority to Horry County State Bank's mortgage. We affirm.

## FACTS

Branch Banking and Trust Company (BB & T) initiated a foreclosure action against certain property in Horry County. The property was sold by the County at auction to Michael R. Ray as representative of Park–Ray Landscape, Inc. (Park–Ray). Ray issued a cashier's check to the County as payment for his bid on the property. By all accounts, the check appeared on its face to be regular and valid. The County disbursed funds to BB & T in satisfaction of its outstanding mortgage on the property before the check cleared. The County then discovered the cashier's check from Park–Ray had been dishonored. On July 31, 2002, the County filed a *lis pendens* on the property. Within a few days, Park–Ray delivered a second cashier's check to the County. That check was subsequently found to be fraudulent as was the first check. On August 1, Park–Ray gave a mortgage on the property to Horry County State Bank (HCSB). HCSB investigated the title to the property and on August 19 recorded its mortgage. The County cancelled its *lis pendens* on August 27.[1]

Park–Ray defaulted on the mortgage held by HCSB and HCSB sold the property. The proceeds from that sale are being held in escrow by HCSB subject to the County's claim

---

1. The County filed several more *lis pendens* over the course of the next ten months. However, none of those seem to be important with respect to HCSB's constructive or actual knowledge in this case.

to the proceeds. At trial before the special referee, the attorneys who handled the loan closing testified the title examiner's documents indicated a *lis pendens* was filed against the property on July 31. They further testified the examination sheet did not indicate the *lis pendens* had been removed. The special referee determined the *lis pendens* filed by the County was invalid and ineffective because the County did not commence a lawsuit within twenty days after the filing of the *lis pendens*. Consequently, the County's claim to the proceeds did not take priority over the claim of HCSB. The special referee further found the County did not meet the requirements to establish an equitable lien on the property that would take priority over HCSB's mortgage. This appeal followed.

## STANDARD OF REVIEW

The appellate court's standard of review in equitable matters is our own view of the preponderance of the evidence. *Williams v. Wilson*, 349 S.C. 336, 339–40, 563 S.E.2d 320, 322 (2002). "An action to establish an equitable lien and to establish lien priorities is an action in equity." *Fibkins v. Fibkins*, 303 S.C. 112, 115, 399 S.E.2d 158, 160 (Ct.App.1990) (citations omitted). "By the same token, an action to foreclose a mortgage is an action in equity." *Id.*

## LAW/ANALYSIS

### I. Constructive and Actual Notice

The County contends the special referee erred in finding the *lis pendens* did not provide notice to HCSB of the County's interest in the property. We disagree.

Section 15–11–10 of the South Carolina Code (2005) sets forth the timing requirements for filing a notice of *lis pendens*. In an action affecting the title to real property, a party may file, not more than twenty days before filing a complaint, notice of the pendency of an action containing the names of the parties, the object of the action, and the description of the property affected. *Id.*

Section 15–11–20 of the South Carolina Code (2005) explains the effect of filing a *lis pendens*.

From the time of filing only, the pendency of the action shall be constructive notice to a purchaser or encumbrancer

of the property affected thereby, and every person whose conveyance or encumbrance is subsequently executed or subsequently recorded shall be deemed a subsequent purchaser or encumbrancer and shall be bound by all proceedings taken after the filing of such notice to the same extent as if he were made a party to the action. For the purposes of this section, an action shall be deemed to be pending from the time of filing such notice.

*Id.*

"The purpose of a notice of pendency of an action is to inform a purchaser or encumbrancer that a particular piece of real property is subject to litigation." *Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 16, 567 S.E.2d 881, 889 (Ct.App.2002). "Generally, the filing of a lis pendens places a cloud on title which prevents the owner from freely disposing of the property before the litigation is resolved." *Id.* at 17, 567 S.E.2d at 889.

The lis pendens mechanism is not designed to aid either side in a dispute between private parties. Rather, lis pendens is designed primarily to protect unidentified third parties by alerting prospective purchasers of property as to what is already on public record, *i.e.,* the fact of a suit involving property. Thus, it notifies potential purchasers that there is pending litigation that may affect their title to real property and that the purchaser will take subject to the judgment, without any substantive rights.

*Id.* (quoting 51 Am.Jur.2d *Lis Pendens* § 2 (2000)).

The special referee relied on *South Carolina National Bank v. Cook*, 291 S.C. 530, 354 S.E.2d 562 (1987), in awarding the disputed funds to HCSB. In *Cook*, Myrtle Beach Lumber Company, Inc. (the Lumber Company) filed a notice of *lis pendens* on November 8, 1977 but did not file its summons and complaint until more than twenty days later on December 1, 1977. *Id.* at 531, 354 S.E.2d at 562. On December 5, 1977, South Carolina National Bank obtained a judgment lien against the owner of a one half interest in the property. *Id.* Eventually, as a result of the litigation instituted by the Lumber Company, the property was deeded to the Lumber Company, who conveyed it to the Cooks. *Id.* When SCN sought to foreclose its judgment lien, the Cooks argued SCN's

interest in the property was subordinate to their own. *Id.* at 532, 354 S.E.2d at 562. The supreme court disagreed stating: "Since the legislature clearly intended that a lis pendens not be filed more than twenty days before the complaint, we hold the premature filing of the lis pendens rendered it invalid. Since the lis pendens filed by Lumber Company was ineffective, SCN was not bound by the prior proceedings and its lien was not extinguished." *Id.* at 532–33, 354 S.E.2d at 563.

Likewise, in the case before us, the County failed to file a summons and complaint within the twenty day period as required by statute. Therefore, the *lis pendens* was rendered invalid and could not have provided constructive notice of any claim by the County to HCSB.

The County argues even if HCSB was not put on constructive notice by the *lis pendens,* HCSB had actual notice of the County's interest in the property. We disagree.

The County argues the chain of title contained several red flags, in addition to the *lis pendens,* that provided actual notice to HCSB of the County's claim. First, the outstanding mortgage of BB & T was not marked satisfied. However, the Statement of Disbursement from the master-in-equity indicated the initial sale of the property was final and that the funds had been disbursed to BB & T.[2] The deed conveying the property to Park–Ray appeared normal and was duly recorded. Furthermore, according to the closing attorneys' testimony in the record, their services were procured by Ray and Park–Ray.[3] We are reluctant to impute whatever knowledge may have been revealed by the title examination to HCSB when it is unclear who actually represented HCSB's interests in the closing. *See Costas v. First Fed. Sav. & Loan Ass'n,* 283 S.C. 94, 99, 321 S.E.2d 51, 54 (1984) (finding knowledge of closing attorney was not imputed to bank when attorney was procured and paid by the borrower and was not under the sole direction of the bank).

---

2. According to HCSB, it is "commonplace" for attorneys in Horry County to rely upon the Master's Deed and the Order of the Master with respect to a mortgage that remains unsatisfied following a foreclosure sale.

3. According the closing attorneys' testimony, their law firm had represented Ray and Park–Ray on some other legal matters, and he inquired with the firm about handling the closing of the loan from HCSB.

Even if the title examination put HCSB on inquiry notice[4] of the County's claim, it appears any inquiry would have resulted in assurances from the County that the matter had been or was about to be resolved.[5] The County's attorney testified that once a second cashier's check was issued in early August, he "figured everything was taken care of." Believing the matter to be resolved, the County did not file a lawsuit and ultimately canceled the *lis pendens* on August 27.[6] At the time of HCSB's title search, the full extent of Ray's fraudulent conduct was not known to the County and could not have been discovered by HCSB. Therefore, we cannot conclude the *lis pendens* or unsatisfied mortgage functioned to provide actual notice to HCSB of the County's claim.

## II. Equitable Lien

The County also contends the special referee erred in finding it failed to establish an equitable lien with priority over HCSB's mortgage against the property. We disagree.

With respect to the County's interest, it is arguable Park–Ray's conduct gave rise to an equitable lien against the property. An equitable lien is "neither an estate or property in the thing itself, nor a right to recover the thing, but is simply a right of a special nature over the thing, which constitutes a charge upon the thing." *Fibkins v. Fibkins*, 303 S.C. 112, 115, 399 S.E.2d 158, 160 (Ct.App.1990) (quoting *Carolina Attractions, Inc., v. Courtney*, 287 S.C. 140, 145, 337 S.E.2d 244, 247 (Ct.App.1985)). "An equitable lien is a 'mere floating equity until a judgment or decree subjecting the

---

4. Inquiry notice is a form of constructive notice that may have the same effect as actual notice. *See Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 64, 504 S.E.2d 117, 122 (1998).

5. We do not make a finding regarding whether the *lis pendens* would have provided actual or inquiry notice to HCSB under circumstances other than those existing in this case.

6. The County's attorney did attempt to investigate the matter by speaking with Ray and corresponding with several attorneys named by Ray. In fact, the County received faxed correspondence purportedly from an Atlanta attorney stating the problem with the first cashier's check was an internal banking error and a second check was on its way. In hindsight, it appears from the record those faxes may have actually been prepared and sent by Ray.

property to the payment of the debt or claim is rendered, but even though not judicially recognized until a judgment declaring its existence, it relates back to the time it was created by the conduct of the parties.'" *Id.* (quoting Am.Jur.2d *Liens* § 22 (1970)).

Whether an equitable lien exists that would take priority over HCSB's interest must be considered in conjunction with other well-recognized equitable principles. When "one of two innocent parties must suffer loss, it must fall on the party who, by incautious and misplaced confidence, has occasioned it or placed it in the power of a third party to perpetrate the fraud by which the loss has happened." *MI Co. v. McLean,* 325 S.C. 616, 624, 482 S.E.2d 597, 601 (Ct.App.1997) (quoting *City Council of Charleston v. Ryan,* 22 S.C. 339 (1884)). Had the County not disbursed funds to BB & T prematurely without verifying the existence of the funds, it would not be injured. We are mindful Ray is primarily responsible for the parties' injuries; however, as between the County and HCSB, we conclude the County must bear the consequences of its conduct. Therefore, we cannot accord any potential interest of the County priority over the mortgage of HCSB.

Based on all of the foregoing, the order of the special referee is

**AFFIRMED.**

SHORT, J., and CURETON, A.J., concur.