732 S.E.2d 876

CAROLINA PARK ASSOCIATES, LLC, and Republic–
Charleston, LLC, for itself and on behalf of Carolina
Park Associates, LLC, Appellants,

v.

Benedict T. MARINO, Douglas H. Dittrick, John Chalsty,
MDC of Charleston, LLC, and CDM of Charleston,
LLC, Respondents.

Appellate Case No.2011–193286.

No. 27175.

Supreme Court of South Carolina.

Heard May 23, 2012.

Decided Oct. 3, 2012.

2

Richard S. Rosen, Elizabeth Janelle Palmer, and Alice F. Paylor, all of Rosen Rosen & Hagood, of Charleston, for Appellants.

Carl Everette Pierce, II and Joseph C. Wilson, IV, both of Pierce Herns Sloan & McLeod, of Charleston, Molly Hughes Cherry, of Nexsen Pruet, of Charleston, and George Trenholm Walker, of Pratt–Thomas Walker, of Charleston, for Respondents.

Acting Chief Justice PLEICONES.

Carolina Park Associates, LLC, lost its interest in a parcel of real property through foreclosure. At the foreclosure sale, an affiliate of one of Carolina Park Associates' members purchased the property. Appellant Republic–Charleston, the managing member of Carolina Park Associates, contends that the circuit court erred when it dismissed claims seeking to

impose a constructive trust in the property and when it cancelled a lis pendens filed by Appellants.[1] We affirm.

## FACTS

In 1987, CDM of Charleston, LLC (CDM) purchased Carolina Park, a large mixed-use real estate development in Mt. Pleasant, South Carolina (the Property). CDM is owned by trusts and partnerships formed by the individual Respondents, Benedict Marino, Douglas Dittrick, and John Chalsty. MDC of Charleston, LLC (MDC), also owned by trusts and partnerships affiliated with the individual Respondents, together with Appellant Republic–Charleston, LLC (Republic), formed Carolina Park Associates, LLC (Carolina Park). Each held a 50 percent interest, with Republic as the managing member. Carolina Park's sole purpose was to purchase and develop the Property. Carolina Park purchased the Property from CDM for $3 million cash and a $22 million promissory note secured by a second mortgage on the Property. A first mortgage was held by NBSC and later sold to Palmetto Debt Holding Group, LLC (Palmetto Debt).

Carolina Park defaulted on its mortgages, and Palmetto Debt initiated foreclosure proceedings in 2009. In March 2010, Carolina Park and its lenders, Palmetto Debt and CDM, entered a foreclosure consent order, which recognized CDM's right to credit bid [2] the amount of its second mortgage on the Property at the foreclosure sale.

At some point, CDM located an entity interested in participating in the development of the Property, Grove Land Investors, LLC (Grove Land). Grove Land agreed to contribute $32 million to CDM in exchange for being admitted as controlling majority member, conditioned on CDM's ability to acquire the Property through the foreclosure.

In July 2010, the foreclosure sale took place. CDM was the only bidder. It purchased the Property for $50 million, pay-

---

1. Additional allegations, such as breach of contract, are not involved in this appeal

2. A credit bid permits a bidder who holds a mortgage on the property to substitute the value of the mortgage in place of cash at the foreclosure sale.

ing $28 million to redeem the Palmetto Debt mortgage and credit bidding its $22 million second mortgage. The foreclosure was neither opposed by any party, including Carolina Park and Republic, nor appealed.

Thereafter, Republic initiated this suit in its own behalf and derivatively on behalf of Carolina Park against CDM, the holder of the second mortgage and purchaser at the foreclosure sale, MDC, Republic's partner in Carolina Park, and the individual principals of CDM and MDC. Republic alleged, among other things, that MDC violated its duty of good faith and fair dealing to Carolina Park by usurping its corporate opportunity. Appellants contend that CDM is liable for MDC's acts because it exercised dominion and control over MDC. Appellants seek a constructive trust on the Property, an injunction preventing CDM from encumbering or disposing of the Property, and consequential damages. Appellants also filed a lis pendens on the Property.

CDM moved to cancel the lis pendens and to dismiss. The circuit court granted the motion to dismiss in part, finding that Appellants had failed to state facts sufficient to support their claim for a constructive trust on the Property or for injunctive relief preventing encumbrance or disposition of the Property, and granted the motion to cancel the lis pendens. In order to protect Appellants' interests, the circuit court ordered CDM to provide a semiannual accounting and details of the financial position of all CDM partners. Appellants appealed, seeking reinstatement of their claims for a constructive trust over the Property itself rather than over the proceeds derived therefrom, and seeking reinstatement of the lis pendens.

## ISSUES

1.  Did the circuit court err when it dismissed the causes of action seeking to impose a constructive trust on the Property?

2.  Did the circuit court err when it canceled the lis pendens?

### DISCUSSION

In reviewing a motion to dismiss, this Court applies the same standard of review as the trial court. *Doe v. Marion*, 373 S.C. 390, 395, 645 S.E.2d 245, 247 (2007). A ruling dismissing a complaint for failure to state facts sufficient to constitute a cause of action must be based solely on allegations set forth in the complaint. *Id.* "If the facts alleged and inferences reasonably deducible therefrom, viewed in the light most favorable to the plaintiff, would entitle the plaintiff to relief on any theory," dismissal is improper. *Id.* "Questions of law may be decided with no particular deference to the trial court." *Wiegand v. U.S. Auto. Ass'n*, 391 S.C. 159, 163, 705 S.E.2d 432, 434 (2011).

### I.  Constructive Trust

Appellants argue that the circuit court erred when it dismissed the causes of action seeking to impose a constructive trust on the Property. We find that the constructive trust action was properly dismissed because Appellants have failed to allege circumstances under which it would be inequitable to permit CDM to retain title to the Property. We therefore affirm.

An action to declare a constructive trust is in equity, and a reviewing court may find facts in accordance with its own view of the evidence. *Lollis v. Lollis*, 291 S.C. 525, 530, 354 S.E.2d 559, 561 (1987). "A constructive trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by the one holding legal title." *Id.* at 529, 354 S.E.2d at 560. It "results from fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution." *Id.* "It is resorted to by equity to vindicate right and justice or frustrate fraud." *Whitmire v. Adams*, 273 S.C. 453, 457, 257 S.E.2d 160, 163 (1979). In addition, the standard of proof is high, in that "to establish a constructive trust, the evidence must be clear, definite, and unequivocal." *Lollis*, 291 S.C. at 530, 354 S.E.2d at 561; *see Whitmire*, 273 S.C. at 458–61, 257 S.E.2d at 163–65.

In this case, Appellants allege that Respondents usurped a corporate opportunity by finding a new investor willing to

advance funds toward the purchase of the Property and not giving Carolina Park an opportunity to negotiate with that investor to finance the Property in cooperation with Carolina Park. Appellants do not dispute that Grove Land contributed $32 million cash at the time of the foreclosure sale or that Carolina Park itself was unable to locate a new investor or a lender willing to refinance the existing first mortgage.

Appellants have not advanced any argument explaining why Grove Land would have been interested in providing additional financing to Carolina Park rather than acquiring its interest in the Property through foreclosure. Working with Carolina Park would have required Grove Land to leave Carolina Park with some interest in the Property, whereas acquiring the Property with CDM through foreclosure would give Grove Land a greater equity stake in the Property and venture. By the same token, Grove Land was well aware of the existence of Carolina Park, since Grove Land's participation in the venture with CDM was conditioned on CDM's ability to obtain the Property at the foreclosure sale.

Moreover, at foreclosure, the Property sold for $28 million cash plus the $22 million credit bid. Appellants have not sought a constructive trust for a part interest in the Property. Rather, they assert that Carolina Park is the beneficial owner of the entire Property and seek to have the Property transferred or conveyed to Carolina Park. They ignore the $28 million contributed by Grove Land and reject the circuit court's finding that they have an adequate remedy for any injury through a money judgment or a constructive trust over the profits of the development. Alternatively, Appellants suggest that they are primarily interested in retaining some control over development of the Property through the constructive trust action and lis pendens rather than obtaining outright ownership of the Property. In effect, they acknowledge that imposing a constructive trust on the entire Property would be inequitable to CDM and the Grove Land investors.

We conclude that, taken as a whole and in the light most favorable to Appellants, the allegations simply fail the equitable test that "the circumstances under which property was acquired make it inequitable that it should be retained by the one holding legal title." *Lollis, supra.* The allegations do not

present circumstances in which there is a need to resort to this equitable remedy in order "to vindicate right and justice or frustrate fraud." *Whitmire, supra.*

Even if Appellants had alleged circumstances more clearly reflecting a loss directly attributable to Respondents' activities, equitable relief is unnecessary when an adequate remedy for money damages is available at law. *Monteith v. Harby,* 190 S.C. 453, 3 S.E.2d 250, 251 (1939); *Key Corporate Capital, Inc. v. County of Beaufort,* 373 S.C. 55, 61, 644 S.E.2d 675, 678 (2007) ("[E]quitable relief is generally available where there is no adequate remedy at law. . . ."); *see also Whitmire, supra,* at 458, 257 S.E.2d at 163 ("This liberality [in permitting use of parol evidence] is counterbalanced by the rigid standard of proof which equity decrees as a prerequisite to the establishment of a constructive trust."). In this case, Appellants pled money damages in the alternative and have stated no reason why this relief is inadequate other than that they will be unable to participate in the development of the Property.

Thus, we affirm the circuit court's ruling on the ground that Appellants have failed to state a claim for imposition of a constructive trust as they have failed to state facts showing that the circumstances under which the Property was acquired make it inequitable that it should be retained by CDM.

## II. Lis Pendens

Appellants argue that the circuit court erred when it cancelled the lis pendens they had filed on the Property. They argue that, even if the circuit court correctly dismissed their claim for a constructive trust over the Property, the statute governing lis pendens does not permit a court to cancel one until the action it is filed in connection with has ended. We disagree.

South Carolina Code Ann. § 15–11–10 (Supp.2004) authorizes the filing of a Notice of Pendency of Action, or lis pendens, in relevant part as follows:

In an action affecting the title to real property the plaintiff . . . may file . . . a notice of the pendency of the action, . . . .

"Since the filing of a lis pendens is an extraordinary privilege granted by statute, strict compliance with the statutory provi-

sions is required." *Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 17, 567 S.E.2d 881, 889 (Ct.App.2002). Thus, a lis pendens is permitted only when the action actually "affect[s] the title to real property." *See id.* at 18, 567 S.E.2d at 890.

With regard to a court's cancellation of a lis pendens, S.C.Code Ann. § 15–11–40 (2003) states, in relevant part, that

> The court in which the action was commenced, in its discretion at any time after the action is settled, discontinued, or abated ..., on application of a person aggrieved and on good cause shown ..., may order the notice authorized by this chapter to be cancelled. ...

The statute permits a court to cancel a lis pendens "authorized by this chapter" "at any time after the action is settled, discontinued, or abated." By implication, a lis pendens that meets the statutory requirement for filing may not be canceled during the pendency of litigation. However, if the court finds that the lis pendens does not "affect[ ] the title to real property" as required under § 15–11–10, the lis pendens is not authorized by the statute and the statute does not limit the court's power to cancel it.

Because Appellants have failed to state a claim for a constructive trust, they have no claim affecting the title to real property and the lis pendens is not "authorized by this chapter." We therefore affirm the cancellation of the lis pendens.

## CONCLUSION

Appellants have failed to state a claim for which imposition of a constructive trust would be an appropriate remedy because the facts alleged, even viewed in the light most favorable to them, do not present circumstances in which an equitable remedy is required or needed. Moreover, because dismissal of the claims seeking to impose a constructive trust on the Property was proper, cancellation of the lis pendens was proper.

**AFFIRMED.**

BEATTY, KITTREDGE, HEARN, JJ., and Acting Justice JAMES E. MOORE, concur.