**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Vidhyaben R. Patel, Individually and as Co-Personal Representative of the Estate of Rameshchandra Prabhudas Patel, and Darshak Kumar Patel, Individually and as Co-Personal Representative of the Estate of Rameshchandra Prabhudas Patel, Appellant-Respondents,

v.

Hardik R. Patel, Anal H. Patel and AAHARVID, LLC, Respondent-Appellants.

Appellate Case No. 2020-001472

———————————

Appeal From Laurens County
Eugene C. Griffith, Jr., Circuit Court Judge

———————————

Unpublished Opinion No. 2024-UP-169
Heard November 7, 2023 – Filed May 8, 2024

———————————

**AFFIRMED**

———————————

Sierra Danielle Carini and S. Jahue Moore, both of Moore Bradley Myers, PA, of West Columbia; and Samuel M. Price, Jr. and Jennifer Dowd Nichols, both of Newberry, all for Appellants-Respondents.

Desa Ballard and Harvey M. Watson, III, both of Ballard & Watson, Attorneys at Law, of West Columbia; and Thomas Carroll Jeter, III, of Nosal & Jeter, LLP, of Fort Mill, all for Respondents-Appellants.

---

**PER CURIAM:**  In this civil action, Vidhyaben "Vidhya" R. Patel (Vidhya) and Darshak Kumar Patel (Darshak), individually and as co-personal representatives of the estate of Rameschandra Prabhudas Patel (Ramesh) (collectively, Appellants) appeal the trial court's order finding in favor of Hardik R. Patel, Anal H. Patel (Anna), and AAHARVID, LLC (collectively, Respondents).  Appellants argue the trial court erred by failing to impose a resulting or constructive trust over the property at issue, support its order with evidence presented at trial, and set aside the conveyance from AAHARVID into a new company as a fraudulent transfer under the Statute of Elizabeth.  Respondents cross-appealed, arguing the trial court erred by denying their request for relief under the South Carolina Frivolous Civil Proceedings Sanctions Act (FCPSA)[1] and failing to award attorney's fees and costs against Appellants.  We affirm.

## FACTS

Vidhya's spouse, Ramesh, died unexpectedly and intestate in June 2017.  The couple married in India in 1979 and had two children: Hardik and Darshak.  Vidhya and Ramesh immigrated to the United States in 2000 and obtained permanent resident status in 2013.

Appellants filed this action in February 2019, alleging they were entitled to a fifty-percent ownership interest in a residence and a convenience store, both located in Clinton, including the real estate, cash, and inventory of the convenience store.  Appellants further alleged they were entitled to a fifty-percent membership interest in AAHARVID, LLC and its assets.  Appellants alleged causes of action for resulting trust and constructive trust as to both the residence and the convenience store.  Appellants alleged Vidhya and Ramesh purchased the residence but because their immigration status would make it difficult for them to obtain a loan to finance the purchase, the residence was titled in Hardik's name.  Appellants further alleged Vidhya and Ramesh provided the funds to lease and operate the convenience store and that the designation of Anna, Hardik's spouse, as

---

[1] S.C. Code Ann. §§ 15-36-10 to -100 (Supp. 2023).

the sole member of AAHARVID, LLC was "for administrative convenience with the understanding that the membership interest would be held in trust by An[na] for the benefit of Ramesh and Vidhya." In their answer and counterclaims, Respondents sought a declaratory judgment that Hardik owned the residence and Anna owned AAHARVID and all assets of the convenience store.

The case proceeded to a non-jury trial. The testimony of Vidhya and Darshak conflicted with that of Anna and Hardik regarding the ownership of the residence and the convenience store. According to Vidhya, Ramesh purchased the residence but titled it in Hardik's name. Vidhya claimed Ramesh leased and purchased the convenience store using their personal funds. However, she could not say how much he paid for the down payment on either purchase. According to Anna and Hardik, Ramesh and Vidhya were employees of the store but Anna, through AAHARVID, owned it. Anna and Hardik testified they purchased the residence and the convenience store with their own funds and these properties were titled in their names, respectively, because they owned them. The parties do not dispute that Vidhya, Ramesh, Hardik, and Anna all lived together at the residence for a time and that after Hardik and Anna moved out in 2011, Vidhya and Ramesh continued to live there.

Anna testified during trial that AAHARVID, LLC leased the convenience store from P&P Investment (P&P) in 2007. Anna stated she was the owner of AAHARVID and Prakash Patel and Pallev Desai were the owners of P&P. Anna clarified she was the sole owner of AAHARVID at the time it was created and identified her signature on the documents forming the company. Anna testified Hardik came up with the name AAHARVID and that the "AA" stood for Anna, the "HAR" stood for Hardik and the "VID" stood for Vidhya. She explained they included Vidhya's name because she was family. Anna testified she and Hardik leased the convenience store, including goodwill and inventory, for $124,000. She executed a promissory note for $124,113.69 to Prakash on August 3, 2007. The lease and promissory note were entered into evidence at trial, and the note bore Anna's signature as the obligor. She stated they obtained a loan from P&P for the entire amount and AAHARVID did not pay any money down at the time of the lease. Anna testified the payments to Prakash for the lease came out of AAHARVID's business profits which were held in AAHARVID's business account. Anna testified there was no specific period on the lease but she and Hardik paid all of it back. Anna denied Ramesh paid $40,000 to Prakash to satisfy any portion of the lease. Anna stated neither Ramesh nor Vidhya ever claimed to have an ownership interest in the store and there was never a discussion that the store was being leased for Ramesh and Vidhya.

Anna testified she and Hardik purchased the store in the name of AAHARVID in 2012 by taking out a loan from BB&T. She stated they personally guaranteed the loan and that they paid the mortgage on the loan from the convenience store's earnings, which were held in its business account. Anna explained Ramesh negotiated the 2012 sale of the convenience store because he was a great businessman and she and Hardik trusted him. She explained she and Hardik provided the financing for the purchase of the convenience store and the real estate upon which it was located. Anna stated they obtained a loan from BB&T for $385,000 with a five-year term. She testified Ramesh had no part in setting up AAHARVID or the financing for the purchase of the convenience store. Anna stated Prakash, not Desai, handled the financing for AAHARVID to purchase the store.

Anna testified Vidhya and Ramesh were both salaried employees of the convenience store but that she was not aware of Vidhya ever working more than forty hours per week. Anna explained that in 2011, she and Hardik moved to Richmond, Virginia, and they gave Ramesh and Vidhya check-signing authority so they could manage the store in Hardik's and Anna's absence.

Anna stated the fact she and Hardik had obtained permanent resident status while Vidhya and Ramesh possessed only work permit visas had nothing to do with the way the residence or convenience store were titled. Anna testified she and Hardik paid the down payment on the residence using their own funds, which they had earned from their respective jobs. She stated the residence was purchased from foreclosure for $39,000. She denied Vidhya and Ramesh put down any money on the purchase. Anna agreed the home was not livable when it was purchased and required renovation. She stated Hardik completed most of the renovations with the help of two contractors and the cost was between $45,000 and $50,000. Anna recalled they took out a loan from BB&T to finance the renovations. She stated Vidhya and Ramesh lived at the residence after she and Hardik moved out but Hardik continued to pay the taxes and the insurance.

Anna acknowledged she obtained an interest in a hotel in Newberry (the Newberry hotel) where Ramesh worked, and that she transferred half of her interest to Hardik. She could not recall whether she purchased the interest. Anna stated she and Hardik later gave away their shares in the Newberry hotel.

Vidhya testified she and Ramesh shared finances and that she was familiar with the finances. She agreed Ramesh was involved in the purchase of the Newberry hotel

and that he put down some money, but she did not know how much. Vidhya testified she worked in the convenience store from 2007 to 2018. Vidhya asserted she and Ramesh owned the convenience store, she worked there sixty hours per week, and she did not receive a paycheck. She stated she and Ramesh ran the cash register, ordered the inventory for the store, paid all of the bills, and handled the checkbook for the convenience store. Vidhya testified she and Ramesh put down money when the store was leased, but she did not know how much. She testified the name AAHARVID stood for Anna, Hardik, Vidhya, Darshak, and Ramesh and that they all got together and came up with this name as a family. Vidhya testified that when she and Ramesh leased the store, they took out a note for about $80,000 for the inventory and goodwill. Vidhya testified they paid the monthly payments on the lease with the convenience store's profits. She stated that when the store was leased, she and Ramesh paid about $25,000 for necessary repairs and upgrades to the property. Vidhya testified that when the Newberry hotel was sold, Ramesh's portion of the price was paid to Prakash for the note on the convenience store. Vidhya confirmed the residence was titled in Hardik's name. Vidhya recalled the residence was purchased for about $39,000 and that she and Ramesh paid for it. Vidhya testified she and Ramesh paid the taxes and the insurance on the home and the convenience store. During cross-examination, Vidhya admitted she received W-2 tax forms for the years 2011 through 2016 showing she was an employee of the convenience store and that she filed a worker's compensation claim in 2012 in which she stated she was an employee.

Desai testified he owned the Newberry hotel in 2006 and sold it to an LLC for about $1.8 million. He stated Ramesh, Prafull Patel, and Prakash Patel were involved in the purchase. Desai testified that, on behalf of P&P, he negotiated the lease of the convenience store with Ramesh. He stated AAHARVID was the party on the note but he only dealt with Ramesh and Ramesh was obligated on the note given to Prakash. Desai testified he was present when the lease was signed and that Prakash received about $120,000, which consisted of about $40,000 cash and the rest was a note. He stated the lease was made to AAHARVID because as a landlord he wanted to do business with a legal resident of the United States. Desai further testified he was involved in the financing for the purchase of the convenience store and that Ramesh was not able to obtain financing from the bank, so the sale was made to AAHARVID. Desai testified Ramesh made the down payment for the purchase of the convenience store and paid $80,000 on the note taken out for the goodwill and inventory. Desai stated he did not know where Ramesh obtained the funds to pay the down payment.

Prafull Patel testified he was one of the owners of the Newberry hotel.  He stated he, Ramesh, Prakash, and another individual formed a company to purchase the hotel.  Prafull testified Ramesh paid $200,000 toward the purchase, giving him a forty-percent interest in the hotel.  He stated Ramesh transferred his interests to Anna and Hardik around 2007.  Prafull explained Ramesh later withdrew himself from ownership of the hotel.

Regarding the Newberry hotel, Hardik clarified Ramesh gifted his forty-percent interest to Anna who then transferred twenty percent to Hardik.  He testified they later gave up their shares in the Newberry hotel to resolve what the owners determined was an accounting error by Ramesh and that he and Anna received no value for their shares.  Hardik identified an agreement titled "Memorandum of Understanding" dated July 10, 2013, pursuant to which Hardik and Anna agreed to transfer their combined forty-percent interest to Prakash.  This memorandum stated that in exchange for these transfers, Prakash agreed the August 3, 2007 promissory note for the convenience store had been fully satisfied.  Hardik agreed the memorandum contained this language but stated the note had already been paid in full by this time.

Hardik testified he purchased the residence.  He explained he made the down payment and he and Anna took out a loan for the purchase price.  Hardik testified he supplied a check for $6,573.57 at closing and the deed was in his name. Documents in the record show a wire transfer of $2,500 in earnest money was drawn on the bank account that belonged only to Hardik and Anna.  Hardik stated he and Anna were the obligors on the loan and he paid all of the mortgage payments on the residence since the purchase.  Hardik stated the BB&T account ending in 3464, from which the down payment for the residence and the mortgage payments were made, was Anna's account.  He stated Ramesh was added to the account as a convenience after 2011 when Hardik and Anna moved to Virginia. Hardik further testified he paid the taxes and insurance on the residence.  He stated there was never a discussion that Ramesh could not own property because of his immigration status and Ramesh had in fact owned other property in his name.

Hardik testified AAHARVID was held only in Anna's name and was not a family business.  As to the convenience store, Hardik testified he, Anna, and Prakash verbally agreed they would lease the store for five years and then purchase the store.  He explained when they leased the store in 2007, Prakash loaned them the full amount at 8.5% interest and they paid no cash down.  Hardik stated they made payments on the loan using the convenience store's earnings, which were held in the convenience store's business account.  He denied Ramesh and Vidhya made

any payments on the loan. As to the down payment for the purchase of the convenience store, Hardik stated he had a well-paying job at the time and provided some money towards the purchase and that the remainder came from the convenience store's earnings. He stated the convenience store belonged solely to Anna's company. Hardik further testified Ramesh never asked to transfer title in the properties to his own name after he obtained permanent residence status in 2013.

The circuit court ruled in favor of Respondents as to Appellants' claims and found against Respondents as to their counterclaims against Appellants. The circuit court concluded Appellants failed to establish the existence of a constructive trust or resulting trust by clear and convincing evidence. The circuit court found Hardik and Anna used their personal funds and profits of the convenience store to purchase the residence and convenience store. The circuit court further found there was conflicting testimony and evidence as to whether the residence or the convenience store were to belong in whole or in part to Ramesh and concluded the testimony of Respondents outweighed the testimony of the Appellants. In addition, the circuit court stated Appellants' arguments regarding immigration status, if true, would support a conclusion that the transactions were fraudulent in nature, such that equity would not provide a remedy or impose a trust over the residence or convenience store. In making its rulings, the circuit court noted it "carefully observed each witness," including their "tone of voice, gesture[s], hesitation or readiness to answer questions, their sincerity and mannerisms, as well as their biases and alliances" in evaluating their credibility.

Appellants filed a motion to reconsider, which the circuit court denied. Respondents subsequently filed a motion pursuant to the FCPSA for attorney's fees and costs. The circuit court denied the motion, finding Appellants' claims were not frivolous under the FCPSA and noting the case was very close factually but the Respondents' testimony and evidence outweighed Appellants' testimony and evidence. Respondents filed a motion to reconsider, which the circuit court denied.

## ANALYSIS

### I. Implied Trusts

### Standard of Review

Actions seeking to impose a constructive trust or resulting trust are in equity. *Donnan v. Mariner*, 339 S.C. 621, 626, 529 S.E.2d 754, 756-57 (Ct. App. 2000).

Therefore, "a reviewing court may find facts in accordance with its own view of the evidence." *Carolina Park Assocs., LLC v. Marino*, 400 S.C. 1, 6, 732 S.E.2d 876, 879 (2012). "While this permits us a broad scope of review, we do not disregard the findings of the [circuit court], who saw and heard the witnesses and was in a better position to evaluate their credibility." *Jocoy v. Jocoy*, 349 S.C. 441, 444, 562 S.E.2d 674, 675 (Ct. App. 2002) (quoting *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989)).

## A.  Resulting Trust

We hold the circuit court did not err by finding Appellants failed to establish a resulting trust for Ramesh's benefit as to the convenience store and the residence.

"Equity devised the theory of resulting trust to effectuate the intent of the parties in certain situations where one party pays for property, in whole or in part, that for a different reason is titled in the name of another." *Bowen v. Bowen*, 352 S.C. 494, 499, 575 S.E.2d 553, 556 (2003).

> The general rule is that when real estate is conveyed to one person and the consideration paid by another, it is presumed that the party who pays the purchase money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf.  The presumption, however, may not be in accord with the truth.  It may be rebutted and the actual intention shown by parol evidence.

*Hayne Fed. Credit Union v. Bailey*, 327 S.C. 242, 249, 489 S.E.2d 472, 475 (1997) (citations omitted).

"[T]he evidence to establish a resulting trust must be definite, clear, unequivocal and convincing." *Moore v. McKelvey*, 266 S.C. 95, 98, 221 S.E.2d 780, 781 (1976).  "[F]or a resulting trust to arise, [it] must arise, if at all, at the time the purchase is made.  The funds must then, or prior thereto, be advanced and invested.  A trust will not result from funds subsequently furnished." *Glover v. Glover*, 268 S.C. 433, 437, 234 S.E.2d 488, 489 (1977) (quoting *Hodges v. Hodges*, 243 S.C. 299, 307, 133 S.E.2d 816, 819-20 (1963)).  Thus, the purported beneficiary of the resulting trust must "show by definite, clear, unequivocal, and convincing evidence that she paid a definite portion of the purchase money *at the time of the transaction*." *Id.* at 435, 234 S.E.2d at 489 (emphasis added); *see also id.* at 436, 234 S.E.2d at 489 (finding "[t]he record show[ed] conclusively that [the purported

beneficiary] paid no part of the purchase money for the property nor did she incur any legal obligation in connection with the transaction").

We hold Appellants failed to meet their burden of proving that either the residence or the convenience store was purchased for Ramesh's benefit. As an initial matter, the circuit court found the testimony of Respondents outweighed the testimony of the Appellants on the issue of whether the residence or convenience store was to belong in whole or in part to Ramesh. The circuit court noted it "carefully observed each witness," including their "tone of voice, gesture[s], hesitation or readiness to answer questions, their sincerity and mannerisms, as well as their biases and alliances" in evaluating their credibility. Appellants' testimonies conflicted with that of Respondents' regarding ownership of the residence and convenience store. In addition, Vidhya's testimony was at times self-contradictory, such as when she stated she was an owner of the convenience store but then admitted that she received W-2 tax forms from 2011 to 2016 showing she was an employee and had filed a worker's compensation claim in 2012 in which she stated she was an employee. Where the testimony in the record conflicts, we do not disregard the circuit court's findings as to the witnesses' credibility. *See Jocoy*, 349 S.C. at 444, 562 S.E.2d at 675 ("[W]e do not disregard the findings of the [circuit court], who saw and heard the witnesses and was in a better position to evaluate their credibility." (quoting *Tiger, Inc.*, 301 S.C. at 237, 391 S.E.2d at 543)).

We hold Appellants failed to set forth definite, clear, unequivocal, and convincing evidence that Vidhya or Ramesh paid a definite portion of the purchase money when the residence or convenience store was purchased. Only Respondents provided documentary evidence associated with the transactions at issue, and this evidence did not support Appellants' claims. Although Vidhya testified Ramesh provided money for the purchase of the residence, she did not know how much, and no evidence shows Vidhya was present for any of the transactions at issue. Hardik testified he purchased the residence. The loan closing documents from the purchase of the residence shows only Hardik provided money for the down payment. The documents showed a transfer of $2,500 in earnest money was drawn on a bank account that Hardik testified belonged to only Anna and himself and that Hardik paid $6,573.57 at closing using a check drawn from the same account. Hardik stated the money came from Anna's employment and the earnings from the store. The documents further show Hardik obtained a loan for the purchase of the residence and was the only obligor on the loan. Hardik stated he paid every mortgage payment on the home since purchasing it. Additionally, he and Anna testified he had paid the taxes and insurance on the residence.

As to Vidhya's testimony that she and Ramesh paid for renovations to the residence, Anna testified Hardik paid for these renovations through another loan. Regardless, "[a] trust will not result from funds subsequently furnished." *Glover*, 268 S.C. at 437, 234 S.E.2d at 489.

As to the lease of the convenience store, we find the record does not set forth by clear, unequivocal, and convincing evidence that Ramesh surrendered his ownership interest in the Newberry hotel to satisfy the balance on the note for the lease of the convenience store. Although Hardik acknowledged a memorandum recited this, he stated he and Anna had already satisfied the balance on the note before the memorandum was written. In addition, the promissory note for the purchase of the goodwill and inventory for $124,000 shows Anna as the only obligor. Moreover, the record contains no financial documentation showing Ramesh made any payments on the lease.

As to the purchase of the convenience store, Anna testified she and Hardik obtained a $385,000 loan from BB&T for the purchase. The loan was made to AAHARVID, and it is undisputed Anna was the sole member and manager of AAHARVID. Hardik testified he and Anna paid the down payment using funds generated by the convenience store and his and Anna's earnings from their respective employers. The closing documents show Anna and Hardik personally guaranteed and were obligated to repay the loan for the purchase of the store. Anna testified Ramesh signed only on behalf of AAHARVID, pursuant to a limited power of attorney, and not as a purchaser or obligor. Documents in the record support this testimony. Further, no documentary evidence shows Ramesh paid any portion of the down payment. Although Desai testified during trial that Ramesh paid the down payment, he did not know where Ramesh obtained the funds, and the record contains no documentary evidence showing who paid this down payment. The record contains a memorandum that Desai signed indicating a down payment of $90,950 was made for the purchase of the convenience store and stating checks submitted as part of the loan request documented this; however, the record does not contain these checks.

Further, we reject Appellants' claims that because Ramesh could not own property due to his immigration status, the properties were titled in Hardik's and AAHARVID's names, respectively, rather than in Ramesh's name. Desai testified Ramesh was one of the members of the LLC to which Desai sold the Newberry hotel in 2006. Likewise, Prafull Patel testified Ramesh owned a forty-percent membership interest in that LLC. In addition, Vidhya testified Ramesh was one of the owners of the Newberry hotel and had also owned a hotel in Concord, North

Carolina. That Ramesh was a member of an LLC when it purchased an interest in the Newberry hotel in 2006—well before he obtained permanent residence status in 2013—indicates his immigration status would not have prevented him from being a member of AAHARVID or purchasing property. In addition, Hardik testified he and Ramesh never discussed that Ramesh could not own property due to his immigration status. Furthermore, as the circuit court acknowledged, "The law will not permit a party to deliberately put his property out of his control for a fraudulent purpose, and then, through intervention of a court of equity, regain the same after his fraudulent purpose has been accomplished." *Settlemeyer v. McCluney*, 359 S.C. 317, 321, 596 S.E.2d 514, 516 (Ct. App. 2004) (quoting *All v. Prillaman*, 200 S.C. 279, 308, 20 S.E.2d 741, 753 (1942)). Accordingly, we find the evidence does not support Appellants' assertions that Respondents held legal title to either property for Ramesh's benefit due to his immigration status.

Based on the foregoing, we find Appellants have failed to prove by definite, clear, unequivocal, and convincing evidence that a resulting trust was created for Ramesh's benefit as to the residence or the convenience store. We therefore affirm as to this issue.

## B. Constructive Trust

We hold the circuit court did not err by failing to find a constructive trust arose in Ramesh's favor.

"A constructive trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by the one holding the legal title." *Lollis v. Lollis*, 291 S.C. 525, 529, 354 S.E.2d 559, 561 (1987). "A constructive trust results from fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution." *Id.* "[A] confidential or fiduciary relationship exists when one reposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one reposing the confidence." *Chapman v. Citizens & S. Nat'l Bank of S.C.*, 302 S.C. 469, 477, 395 S.E.2d 446, 451 (Ct. App. 1990). "A constructive trust arises whenever a party has obtained money which does not equitably belong to him or has been acquired through a breach of trust or the violation of a fiduciary duty." *Id.* at 480, 395 S.E.2d at 453. "[T]he standard of proof is high, in that 'to establish a constructive trust, the evidence must be clear, definite, and unequivocal.'" *Carolina Park Assocs., LLC*, 400 S.C. at 6, 732 S.E.2d at 879 (quoting *Lollis*, 291 S.C. at 530, 354 S.E.2d at 561); *see also All*, 200 S.C. at 304, 20 S.E.2d at 752 ("Proof to

establish a constructive trust must be clear, convincing, and so strong, unequivocal, and unmistakable as to lead but to one conclusion. If the evidence is doubtful or capable of reasonable explanation upon a theory other than the existence of the trust, it is not sufficient to support a decree declaring and enforcing the trust."). "Fraud is an essential element, although it need not be actual fraud." *Lollis*, 291 S.C. at 529, 354 S.E.2d at 561.

We hold Appellants failed to meet their burden of establishing a constructive trust. Anna and Hardik testified regarding the lease and purchase of the store and the purchase of the residence. The documents in the record support their testimonies, showing only AAHARVID as a party to the lease and only Anna as obligated on the payment of the note for the lease. Further, the loan closing documents for the purchase of the convenience store show that only AAHARVID was the borrower and the obligor on the repayment of the $385,000 note and that Hardik and Anna personally guaranteed the loan. Although Desai testified during trial that Ramesh paid the down payment on the purchase of the convenience store, he did not know where Ramesh obtained the funds and no documentary evidence in the record shows who paid this down payment. The record contains a memorandum that Desai signed indicating a down payment of $90,950 was made for the purchase of the convenience store and stating that checks submitted as part of the loan request documented this down payment; however, the record does not contain these checks. Hardik and Anna testified they supplied the money for the down payment using their own funds, which were funds they had earned through their respective employment and through the convenience store's business. Because Anna, through AAHARVID, was the lessee, the convenience store's earnings belonged to her. We find the foregoing does not establish by clear, definite, and unequivocal evidence that Ramesh paid any portion of the down payment on the purchase of the convenience store.

Next, we find Vidhya's testimony that she considered herself and Ramesh to be owners of the convenience store did not set forth clear, definite, and unequivocal evidence that Ramesh was entitled to equitable ownership of the convenience store. Vidhya testified she and Ramesh ordered inventory for and paid the bills of the convenience store; however, Anna testified she gave them signatory authority after she and Hardik moved to Virginia so that Vidhya and Ramesh could manage the convenience store for them while they were gone. Further, Vidhya stated she considered herself to be the owner of the convenience store but then admitted she received W-2s from 2011 to 2016 indicating she was an employee of the store and that she filed a claim for worker's compensation in 2012 in which she stated she was an employee. Regarding Vidhya's assertions that she and Ramesh spent

$25,000 to make repairs to the convenience store, the record contains no documentary evidence showing repairs were made or who paid for such repairs. We find the foregoing testimony failed to establish clear, definite, and unequivocal evidence of a constructive trust.

As to Appellants' contention Ramesh made a $40,000 down payment on the lease for the convenience store, Anna—who executed the note and lease—stated no such down payment was made. Although Desai stated Ramesh paid a down payment of about $40,000, he was not certain of this amount and stated Ramesh paid Prakash, not Desai. Anna denied Ramesh paid Prakash $40,000 for the lease. Further, the record contains no documentary evidence showing a down payment was made. We find the foregoing was not sufficient to establish Ramesh paid a down payment on the lease of the convenience store.

Further, we find the evidence does not show Respondents violated any fiduciary duty. Ramesh already owned a forty-percent interest in the Newberry hotel through his membership in the LLC that purchased it. Vidhya testified Ramesh had also owned a hotel in Concord, North Carolina. In our view, this evidence shows Ramesh possessed knowledge of business dealings and did not rely on Hardik or Anna to conduct business on his behalf. Thus, Appellants failed to establish by strong and unequivocal evidence that Ramesh reposed a special confidence in Hardik or Anna and the evidence therefore does not show they violated any trust or fiduciary duty as to Ramesh. Rather, we find the evidence shows Anna and Hardik purchased these properties using their own funds. Anna stated Ramesh was only involved in the convenience store purchase to help negotiate, and she and Hardik testified they provided all funds for the transaction while Ramesh provided no funds. Hardik testified the down payment for the purchase of the convenience store came from the convenience store's earnings and that he personally contributed some funds that he earned through his employment. Because Anna, through AAHARVID, was the lessee of the convenience store, the convenience store's earnings belonged to her and her company. Hardik testified he and Ramesh never discussed that the purchase of the residence or the convenience store was intended for Ramesh's benefit. Hardik further stated Ramesh never asked him to transfer the residence or convenience store to his name after he obtained permanent resident status in 2013. Documentary evidence in the record, including the closing documents, shows Hardik paid the earnest money and down payments on the purchase of the residence, and he was the obligor on the note. Furthermore, he testified he has paid all taxes, insurance, and mortgage payments on the home since purchasing it. Based on the foregoing, we find Appellants failed

to satisfy their burden of showing Respondents engaged in fraud, bad faith, abuse of confidence, or violation of a fiduciary duty.

For these reasons, we find Appellants failed to prove by clear, definite, and unequivocal evidence that a constructive trust arose, and we affirm as to this issue.

## II. Evaluation of Evidence

We hold Appellants have failed to demonstrate the circuit court erred by ignoring evidence presented at trial or by relying upon the testimony of Respondents as to the underlying facts and the interpretation of documentary evidence. *See Regions Bank v. Wingard Props., Inc.*, 394 S.C. 241, 248, 715 S.E.2d 348, 352 (Ct. App. 2011) ("[D]e novo review does not require an appellate court to disregard the findings of the trial court or to ignore the fact that the trial court is in the better position to assess the credibility of the witnesses."); *id.* at 248-49, 715 S.E.2d at 352 ("Moreover, the appellant is not relieved of the burden of convincing the appellate court that the trial court committed error in its findings."). Here, Vidhya's and Darshak's testimonies directly conflicted with Anna's and Hardik's testimonies with regard to the ownership of the residence and convenience store. The circuit court found Respondents' testimony more credible than Appellants' as to the issue of ownership. Where the testimony conflicts, we do not disregard the circuit court's credibility findings. We hold Appellants have failed to demonstrate the circuit court erred in its findings.

## III. Statute of Elizabeth

As to Appellants' argument the circuit court erred by failing to find the transfer from AAHARVID, LLC to Hardik's new business violated the Statute of Elizabeth,[2] we hold Appellants have failed to preserve this issue for appellate

---

[2] S.C. Code Ann. § 27-23-10(A) (2007) ("Every . . . transfer[] and conveyance of lands . . . goods [or] chattels . . . or of any . . . profit . . . out of the same, . . . made to or for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures must be deemed and taken . . . to be clearly and utterly void . . . ."); *see also Oskin v. Johnson*, 400 S.C. 390, 397, 735 S.E.2d 459, 463 (2012) ("In interpreting [the Statute of Elizabeth], this Court has held conveyances shall be set aside under two conditions: First, where there was valuable consideration and the transfer is made by the grantor with the actual intent to defraud; and, second,

review.  *See Bowers v. Thomas*, 373 S.C. 240, 247, 644 S.E.2d 751, 754 (Ct. App. 2007) ("An issue not raised to and ruled upon by the court is not preserved for appeal.").  Appellants raised this issue for the first time in their proposed order, but the circuit court did not rule on the issue.  Furthermore, although the record contains the circuit court's order denying Appellants' motion to reconsider, this order likewise did not address this issue, and the record does not contain Appellants' motion.  *See Summersell v. S.C. Dep't of Pub. Safety*, 337 S.C. 19, 22, 522 S.E.2d 144, 145-46 (1999) ("[W]here an issue presented to the circuit court in a civil case is not explicitly ruled upon in the final order, the issue must be raised by an appropriate post-trial motion to be preserved for appellate review."); *see also Germain v. Nichol*, 278 S.C. 508, 509, 299 S.E.2d 335, 335 (1983) ("[An a]ppellant has the burden of providing this Court with a sufficient record upon which this Court can make its decision.").  Because the record does not indicate Appellants raised this issue to the circuit court, we hold this issue is unpreserved for appellate review.

## IV. Violation of FCPSA

We hold the circuit court did not err by (1) failing to grant Respondents relief under the FCPSA on the ground that Appellants failed to respond within the statutory thirty-day period or (2) refusing to award attorney's fees and costs based upon its finding that Appellants' case was not "frivolous."

"[A] judge's threshold decision to apply sanctions under the FCPSA sounds in equity . . . ."  *Pres. Soc'y of Charleston v. S.C. Dep't of Health & Env't Control*, 430 S.C. 200, 221, 845 S.E.2d 481, 492 (2020).  "Therefore, an appellate court must review the findings of fact with respect to the decision to grant sanctions under the FCPSA by 'taking its own view of the evidence.'"  *Holmes v. E. Cooper Cmty. Hosp., Inc.*, 408 S.C. 138, 167, 758 S.E.2d 483, 499 (2014) (quoting *Father v. S.C. Dep't of Soc. Servs.*, 353 S.C. 254, 260, 578 S.E.2d 11, 14 (2003)).

First, we hold the statute does not require a court to hold a party in default for failing to respond within thirty days.  Section 15-36-10(A)(4) sets forth the actions for which an attorney or pro se litigant may be sanctioned.  Subsection (D) provides the "party . . . who allegedly violated subsection (A)(4) has thirty days to respond to the allegations *as that person considers appropriate*."  *See* § 15-36-10(D) (emphasis added).  Subsection (E) provides a list of non-exclusive

where a transfer is made without actual intent to defraud but without valuable consideration.").

factors that the circuit court must take into account in determining whether to impose sanctions upon an attorney, party, or pro se litigant, including "the response, *if any*, of the attorney, party, or pro se litigant to the allegation." § 15-36-10(E)(6) (emphasis added).  The foregoing language demonstrates a response is not mandatory and the deciding court has discretion whether to weigh the response or lack thereof in favor of or against the defending party.  Thus, we hold the failure of Appellants to timely respond did not require the circuit court to grant relief to Respondents.

Further, we hold the circuit court did not err by denying Respondents' request for attorney's fees.  In rendering its decision after the trial, the circuit court weighed the conflicting testimonies and made credibility findings.  It ultimately concluded the evidence did not support Appellants' claims.  Considering the evidence in our own view, we find a reasonable attorney in the same circumstances would not believe the case was frivolous as not reasonably founded in fact, was clearly not warranted under existing law, or that the initiation or continuance of the suit was intended merely to harass or injure the other party.  *See* § 15-36-10(C)(1) ("An attorney, party, or pro se litigant shall be sanctioned for a frivolous claim or defense if the court finds the attorney, party, or pro se litigant failed to comply with one of the following conditions: (a) a reasonable attorney in the same circumstances would believe that under the facts, his claim or defense was clearly not warranted under existing law and that a good faith or reasonable argument did not exist for the extension, modification, or reversal of existing law; (b) a reasonable attorney in the same circumstances would believe that his procurement, initiation, continuation, or defense of the civil suit was intended merely to harass or injure the other party; or (c) a reasonable attorney in the same circumstances would believe that the case or defense was frivolous as not reasonably founded in fact or was interposed merely for delay, or was merely brought for a purpose other than securing proper discovery, joinder of proposed parties, or adjudication of the claim or defense upon which the proceedings are based."); *see also* § 15-36-10(C)(2) ("Unless the court finds by a preponderance of the evidence that an attorney, party, or pro se litigant engaged in advancing a frivolous claim or defense, the attorney, party, or pro se litigant shall not be sanctioned.").  In our view, the evidence shows Vidhya and Darshak believed they were entitled to their requested relief and that the facts were such as to warrant this relief.  The evidence presented at trial was simply insufficient to support their position.  We therefore hold the circuit court did not err by denying Respondents' request for attorney's fees and costs pursuant to the FCPSA and we affirm.

**CONCLUSION**

For the foregoing reasons, the circuit court's rulings are

**AFFIRMED.**

**MCDONALD and VINSON, JJ., and LOCKEMY, A.J., concur.**